Mr. Planner, you may proceed. Good morning. May it please the Court, I am Will Planner of Morris Manning & Martin on behalf of the talented FedMet Resources Corporation. FedMet in this appeal challenges a final scope ruling by the U.S. Department of Commerce finding that FedMet's Bastion Magnesia Alumina Carbon Bricks, or MAC bricks, are within the scope of an anti-dumping countervailing duty order on Magnesia Carbon Bricks, or MCBs. In the industry, is MAC brick and MCB, are those terms of art? Yes, they are, Your Honor. So if I said I need to buy a ton of MAC bricks, am I talking about a specific type of product versus MCBs? Yes, Your Honor, you are. And there's evidence in the record to show that companies that sell both products clearly distinguish them. In the case of our client, FedMet, its MAC brick is what's sold under the Bastion brand. FedMet also sells MCBs. Those were sold under a separate product line, and it sells other types of refractory bricks as well. Mr. Planner, page 36 of your opening brief, you say the record is clear that the ITC's investigation and affirmative injury determination was limited to MCBs, and did not cover MAC bricks or other types of refractory bricks. How do you square that with the fact that the ITC included in its preliminary pricing analysis RESCO's MAX Line 10 AFX trademarked product and MCB with added alumina? Well, Your Honor, that's a very important point, because I think there's some confusion about that. What the ITC did in its investigation, it defined three general products that it wanted both the domestic industry and the importers to report prices for. And in terms of defining the characteristics of the product, it referenced that MAX Line 10 product. However, as the ITC defined it, and as it was described, there's no reference in there to alumina. What it said was MAX Line 10 with antioxidant additions, or we want a product that has the specified percentage of magnesium and carbon, and then antioxidant additions similar to the MAX Line 10. There's no indication that the ITC understood or was ever told that RESCO includes any alumina in that product. And therefore, most importantly, there would have been no indication to any of the parties responding to that questionnaire that they were to include products in that pricing category that were MAC bricks, if they otherwise met the specifications. What happened is during the SCOPE proceeding... What's the alumina content of your product? FedMet's product, I believe it's 8 to 16 percent alumina. You contend, on page 47 of your brief, you contend that commerce erred when it dismissed record information from the pocket manual. Do you recall that? Yes, Your Honor. According to the pocket manual, the range of an MACB is defined as a brick that contains 40 to 50 percent alumina. How is a brick an MACB under that definition? Well, that's only part of the definition. Then it says in the disjunctive, or up to, I believe it's 90 percent magnesium, which would, of course, mean no more than 10 percent alumina. So I think what the manual is referring to is that it can have as much as 40 to 50 percent or as little as something that would have 90 percent magnesium. So we believe that our product would fit within that definition. You argued that RESCO intended to exclude MAC bricks from the scope of the investigation, but the ordered list. Magnesium and carbon is the only requisite components. Wouldn't relying on an undefined term render the explicit terms of the scope meaningless? No, Your Honor, it would not. It's important to understand that the explicit terms of the scope was certain magnesium-carbon bricks, and then it goes on to tell you which magnesium-carbon bricks are covered, if those were 70 percent magnesium, et cetera. The scope issue that this presents is the question of, okay, what if you have a product that is not a magnesium-carbon brick, but a MAC brick, but still has 70 percent magnesium? This would be a much tougher case, but for the fact that the Commerce Department, when reviewing the petition, put its finger exactly on this problem. The Commerce Department noted that definition in the scope section. The Commerce Department also noted that on page 10 of the petition, in discussing the like product, RESCO stated that there were other products, including MAC bricks, that were not part of the like product, that were not the subject of the petition. And so the Commerce Department asked RESCO exactly the question we're now wrestling with. They said, okay, look, you have a definition here. You have a statement here that these products, including MAC bricks, are not within the scope. Please explain how to put those together. It's clear. Yes, they did. But what they didn't say is, well, it's clear because it's 70 percent magnesium, because, of course, 70 percent magnesium would only cover some MAC bricks but not others. At some point you say that RESCO understood that there was a distinction between MAC bricks and MCDs. Right. Where's the record of that as opposed to this DELFIC statement? Well, I think the record of it is the petition itself, which describes MAC bricks as non-subject products. It's RESCO's testimony at the ITC staff conference when it said substantially the same thing, which said— Again, that's why I'm saying DELFIC. Well, it's a little DELFIC maybe, but it's important to understand what's going on here, particularly with respect to the ITC. There are a range of refractory products from MAC bricks to MCDs to something called an aluminum mag carbon brick, which has more aluminum mag carbon, to on and on and on. And it's very clear from the petition and from the ITC investigation that RESCO was very concerned about limiting the scope of the like product to only MCDs and to drawing a very sharp distinction between MCDs on the one hand and everything else. And so I think it's in that context. And they refer to all of these terms by their trade names. When the Commerce Department came to them and said, please tell us, how is your scope description excluding MAC bricks, that would have been the perfect time for them to have said, well, it excludes MAC bricks because of the 70% magnesia content. Although, as we know, that would have only excluded some MAC bricks and included some. Mr. Plannard, I understand that an MCB can have some trace elements of alumina. At what point do you have enough alumina by standard definition to reach a MAC brick? Well, I think that the critical threshold is where there's sufficient alumina to make spinel. To make spinel, yes. Isn't that a functional definition rather than a structural one? Yes. I mean, it is true. One of the problems in this case, and this is something that we hear about all the time, is that unlike steel products where you can go and you can pull out the ASTM book and you can read exactly what, say, defines stainless steel versus carbon steel, there isn't a single source like that. It's a matter of practice in the industry. It's a matter of term of art. And so I can't point to you to some authoritative source and say, you know, when it crosses 4.2%, it's now a MAC brick. What about the statement in the petition where it says very clearly, it says, the scope of this investigation excludes, and to me that means like a carve-out, it excludes, and it goes on and describes alumina carbon bricks, alumina silicon carbide carbon bricks. And so isn't that an express disclaimer that the investigation does not cover, is not based on aluminum content? It's based solely on the magnesium and the carbon content. Well, I don't think so, Your Honor, because I don't think you can square that with the statement just a few pages later in the petition where they describe MAC bricks as not part of the like product. If it's not part of the like product, it by definition can't be in scope. And so, again, I think part of the concern here on the part of RESCO was, you know, not wanting to have, in their ITC case, a potential slippery slope because if it had been brought home to the ITC, that there were some MAC bricks over 70 percent and some MAC bricks less than 70 percent, and that some were in and some were out, there would have been a natural like product issue for the ITC, which is to say, well, wait a minute, from a competitive standpoint, maybe we ought to pull in all MAC bricks on the like product side. If we find that there's ambiguity under the K1 factors and we must progress to the K2 factors, is there any way you can win against the standard of review? Well, Your Honor, the standard of review is a challenge. But, you know, we've gone through as best we could in our brief why we believe the Department's K2 analysis was wrong. But the reason we feel so strongly that they shouldn't get to the K1 factors is I think that there's been a little bit of confusion here. In other words, what the Commerce Department has made – You mean K2 factors. Yes. So we should just stop at K1. We should stop at K1. And we should reasonably interpret the scope language based on the – You mean we should go to K1? Why not just on the basis of the petition, the like product determination, the merchandise determination of commerce, the statements of – Those are the K1 factors. Okay. Yes, yes. The K2 factors are the, you know, the old diversified products characteristics. So you're not conceding the K1 factors? No, not at all, Your Honor. What we're saying is that the K1 factors are where you ought to stop. And this is maybe the most important point is that while there may be some issues about defining MAC bricks, in our view those don't go to ambiguity as to the scope. In our view, the scope of the order clearly excludes MAC bricks. Now, there may be a factual question in particular cases whether a particular product is properly understood to be a MAC brick given the way that term was used during the investigation. And, you know, we believe the record is very strong, and I don't think anybody has said to the contrary that FedMAT's Bastion product qualifies as a MAC brick as that term is used in the industry. But if there are factual issues that have to be resolved about whether a particular product falls within that – properly falls within that moniker because, I mean, it's a fact that that was never defined in terms of specifications during the investigations, that's a factual issue. But in our view, it doesn't detract from the clarity of the scope of the orders, which was clearly understood that the term MCBs was not to embrace MAC bricks. Can I save you rebuttal time, Mr. Kline? Thank you. Thank you. Ms. Soros. Thank you, Your Honor. May it please the Court. The trial court's decision should be affirmed in all respects. Beginning with the court's K1 analysis, the trial court correctly sustained Commerce's determination that the K1 sources were not dispositive. Well, look with me at the petition itself. It says – I can drag it up here really quickly – that certain products – let me see here – imports covered by this petition consist of certain MAC bricks. Now, that means that there's things outside the category of MAC bricks, right? Yes, Your Honor. I mean, for example, a high alumina product would be excluded from that – Wait, why do you say that? Well, I'm sorry, Your Honor. I guess I'm thinking about the language in the responses of the petition where there's discussion about alumina-silicon bricks, alumina-carbon bricks, which Your Honor referenced or alluded to earlier. Those products, petitioners or RESCO refer to those products as being – I believe in their proposed scope, they included an express exclusion covering three alumina-type bricks – alumina-silicon, alumina-carbon, and the dolomite-class bricks. But those aren't MCBs at all. No, no. We're looking at bricks that are based primarily on magnesium with the 70% criteria later, and yet those fitting within the 70% criteria, only some of them are covered because certain are not. Which are the ones that are not? There are certain bricks that meet the 70% magnesium category that fall within the petition. Now, if you have certain, that means there are some that do not. Which doesn't? And we're not talking about the ones specifically excluded because those are specifically excluded. So what does certain mean is what I'm asking you. Well, it's not altogether clear what petitioners meant. Well, but isn't it clear? Because the RESCO gets asked directly by the ITC, by the way, do you mean MAC bricks? And they say, those operate very differently. So aren't we getting a pretty clear picture that the certain doesn't apply to the MAC bricks because RESCO themselves says, no, those are different. And then FedMed was even selling MACs at the time. It wasn't like there was a lack of notice here. So it's pretty clear. Couldn't one make a pretty good argument that the certain are the MAC bricks that FedMed was selling? No, Your Honor. Tell me why. Because there's nothing in the petition or the responses on the petition that indicates that a MAC brick or a magnesium carbon brick with added alumina, such as FedMed's bastion brick, is excluded from the petition. What's the certain then? They use the word for a purpose, remember. We have to apply the words. What is outside that certain? Well, but Your Honor, the certain has to be read within the context of what follows, which is the specifications related to what magnesium ranges are required for an MCB to be in scope. Right. So some things within that magnesium range are going to be covered and some aren't because only certain of them are covered. And I'm still looking for what isn't. We know what is, the MAC bricks. Those are covered. What isn't? Your Honor, it's not altogether clear what other types of MACs. So let's assume that there's confusion at that point. We don't know what certain means. Let me finish my question. We don't know what certain means, but RESCO was asked, weren't they, by Commerce to clarify. Yes, Your Honor. And what was that response? Well, when they were asked to clarify, for example, there was discussion about the express exclusion related to... Well, no, they say that magnesium alumina graphite bricks and the subject merchandise do not have, they don't have the same physical characteristics. Users are not perceived by producers and purchasers as being substituted and are easily differentiated by price. I mean, the responses from the petition was clear, was it not, as to this is what we want to be investigated. It's not clear, Your Honor, if we look at the petition and the responses in the petition because the responses on the petition create ambiguity as to what petitioner was referring to. For example, again, the proposed scope included an express exclusion... I suppose you can find ambiguity in all Commerce speech. Well, this is petitioner speech, Your Honor. Well, okay, that's my point. That's my point. A petitioner is bringing an anti-dumping duty investigation and is it not the burden of the petitioner to be clear as to what they're asking Commerce to investigate in order to assist in the like product determination and the subject similar merchandise determination by Commerce. But petitioners did provide an explanation that is relevant. Again, initially in the proposed scope there was an express exclusion. Then petitioners came back and said in a subsequent response to Commerce that we don't need that exclusion. If I could taste the same squirrel for just one second. It says, Resco, in answering that question that Judge Rayne is talking about, says the scope of our petition focuses only on MCB. Notice there's no reference to Mac bricks there. Instead, there's an emphasis on only MCB. Right, Your Honor. But that reference to only MCB doesn't mean or doesn't preclude an MCB without an Illumina. But it's clear what the issue is and where Commerce's confusion. And is this not the opportunity for the petitioner to say, well, Mac bricks are also included. But they don't do that, do they? They did, Your Honor. Again, if I may, Your Honor, when saying an express exclusion related to the Illumina, silicon, etc., types of bricks was not necessary, petitioners actually told Commerce those types of bricks would never be considered a subset of magnesium carbon bricks. The takeaway from that is that any type of brick that would be considered a subset, such as FedMed's product, would be considered in scope. And they expressly state that in the record as to why they did not require an exclusion. And something that is key, Your Honor, to keep in mind is that the references to magnesium aluminum carbon bricks in both the petition and the ITC report did not provide any specification. Imagine the scenario. Imagine the petitioner had responded, that's a good question, Department of Commerce. I see that it was not clear in my scope language. And let me make clear that Mac bricks are also included. Now, do you think if that would have happened and Commerce would have said, okay, we're going to investigate, that the dumping order would look the same way it does today? Well, Your Honor, if they had said that, they would have had to provide technical specifications. Because only technical specifications help us understand what this undefined label means. Well, I agree, but they did that with respect to the MCBs. Right. There's technical specifications with respect to the MCBs, and you're saying that if Mac bricks would have been included or within the scope, that Commerce would have had to have provided technical specifications for that. I'm asking you, wouldn't that change the face of the dumping order? Of course, Your Honor. So you're asking us, if we adopt a position, we're going to have to rewrite the dumping order. No, Your Honor. Point out. Based on, remember that FedMet, and FedMet has conceded this before Commerce, there is no industry standard as to what a Mac brick is. But we have expressed terms in an order that tell us the parameters here, and those parameters don't preclude FedMet's product from being in scope based on the magnesium chemical component and based on the carbon chemical component, which are within range. And as Petitioner said, we exclude the obvious, the aluminum carbon bricks, because they would never be deemed a subset of magnesium carbon bricks. The take-home, again, Your Honor, is that a product with alumina, as long as it meets the magnesium and carbon requirements of the specifications expressly stated in the order, would be within scope. Well, shouldn't we, us as a court and a fellow court, shouldn't we make sure that the take-home moral of this particular case should be that if you're a Petitioner and you're asked by Commerce, is B, we know A is included, is B included? And you go, well, you know, and you never say, yes, B is included. Shouldn't the takeaway be that you better say, yes, B is included? Your Honor, in Nova Steel, this issue came up. And this court's position was that Petitioners can't conceivably encompass the entire universe of relevant products. And this case is on all fours with that. It's not for Petitioners to envision or catalog every conceivable product that can fall within scope. No, but it is Mr. Dorn's time. Oh, I'm sorry, Your Honor. Thank you. Would you give Mr. Dorn four minutes and Ms. Soares-Huston a minute? Good morning, Your Honors. May it please the Court. To begin with, scope language is not based on labels or undefined terms. What does certain mean? That's not a label. That's a word. It could be chemically bonded or other types of bonded. This only deals with the ones that are chemically bonded. So it's only the chemically bonded bricks. The certain? It's chemically bonded. So that's the one. And there's no ASTM spec? But it's going to be these certain bricks that meet the 70%. Some are going to be in. Some are going to be out. Which are the out ones? The scope language. Resco told us, didn't they? They said it's only the MCB, not the MAX. Because the MAX, they say, these other products do not provide the same performance. There's ample evidence in the record that MACs are MCBs. And Commerce went through that. It gave lots of evidence showing that folks refer to, they use the terms interchangeably. So calling it MCB or MACC doesn't make any difference. Well, why did Resco say that when they got asked by Commerce? Why didn't they say? They did exactly. They're interchangeable. The MAC bricks is what we mean. Instead, they say, no, only MCBs. And the others perform differently. They make spinel. Spinel has that permanent locking feature. But, John, they answered the question exactly right. There was no reason to change the scope language. Because they wanted to include all bricks that had met the 70% magnesium and up to 30% carbon. But, Counselor, they're being asked a question head on by Commerce. Are MAC bricks included? And they end up saying, well, we don't, after going through and answering the way lawyers answer questions, and they end up by saying, we don't see any reason to change the scope. Don't you think, as a seasoned practitioner, don't you think that that would have been the opportunity for a petitioner to say, whoa, I better be careful here, and I better make sure that MAC bricks are included. Now, as a seasoned practitioner, what I would have thought is no change in scope is needed, because I'm sticking with the 70% and the 30% criteria. That's what's going to determine what's covered and what's out. And that's the criteria the ITC used. That's the criteria the Commerce Department used. If you met the 70% and 30% requirements, it's in scope. If it doesn't, it's out of scope. Why did Commerce ask the question of RESCO, then? Because they said there are things that appear to be in the scope that cause us questions, including MAC bricks. And the response is, we're only covering MCBs. The others perform differently. Am I reading that wrong? They're focusing on MCBs, and MCBs include MACs. What they appear to me to be saying, and again, I think it's dealt with, is they're saying, we think what you have there is fine for what we're interested in. Because it's already excluding high alumina. It covers what we want it to cover. No, it's excluding high alumina MACs, because those are naturally excluded. Anything with over 30% alumina is excluded based on the 70%. They're specifically excluded down below, so we're not talking about that. They're not specifically excluded. They don't need to be specifically excluded, because they're excluded by implication, because anything with more than 30% alumina doesn't satisfy the magnesia content. And those are the types of MACs that have different performance characteristics. The record is clear that if you have low alumina, as the trial court found, the performance characteristics are very much the same as a normal MCB. Well, they're used interchangeably, are they not? The terms are used interchangeably, Your Honor. The terms are, but are the bricks used interchangeably? Yes. At what level? At what level? And the trial court got it just right. I mean, the trial court went through all the evidence. It rejected the invitation to re-weigh the evidence. And you've got to look at the underpinning factual findings of the Commerce Department as they're interpreted by the trial court. They're not claiming any legal error. This is only substantial evidence. And this court should start with the informed opinion of the trial court in looking at these issues. Thank you, Mr. Warren. Thank you, Your Honor. Mr. Plun, you have three minutes. Thank you, Your Honor. Talk about the interchangeability, Mr. Clarence. On the point of interchangeability? Well, the answer is no, they're not fully interchangeable. But they overlap. There's some overlap. They're used in ladles. They are generally used in different parts of the ladle. Used to line walls. Side walls. The MCBs, the true MCBs, are generally focused on the slide line and the areas that have the highest wear. And that's entirely consistent with the answer that Resco gave to the question about when they were asked about, you know, how does this work with MAC bricks. And I think it's very important to focus on the question Commerce asked because it informs the answer Resco gave. The question Commerce asked is, we see this language on page 10 that excludes. Commerce used the word excludes these products. And they said, how does your scope language operate to exclude those products? There were a couple of different responses Resco could have given. One is they could have said, wait a minute, we didn't mean to exclude those products. You're wrong. Those are included. They didn't say that. In fact, they said they seemed to confirm it. And I agree it's a little Delphic. But they said, you know, our position focuses only on MCB. Those other products are different. The other thing they could have said. And we like what you have. And we like what we have. And the question then is, okay, how can you square those two statements? And the only way to square them, I would submit, is to say, because what we have says 70% magnesia, right? That's their point. The way you square them is to understand that when they use the term MCB, they don't include MAC bricks. MAC bricks are not MCBs as they're being used there. And I think that's very important. The other point that I'd just like to emphasize is. So within the definition, if you have a low aluminum brick, it fits within that definition. It certainly can. It fits within the definition if you say that a low aluminum MAC brick is an MCB. Because the scope of the order is certain MCBs with 70% magnesia. So that's really the whole question. When you say certain MCBs with 70% magnesia, does that mean MAC bricks with 70% magnesia? And that is the question Commerce asked. I mean, that is exactly the question they asked. And they didn't give that answer. They didn't give the answer that Mr. Dorn suggested, which is to say, well, you know, there's really more than one kind of MAC brick out there. And the ones that are low alumina and still meet the 70% criteria, those would be in and the others would be out. They could have said that. They didn't. And they certainly didn't say that to the ITC, which clearly understood that their like product was not including MAC bricks. Because the problem with a low alumina-high alumina distinction is that might work fine for their scope. But how does that work at the ITC when you're doing like product? The ITC very well could have said, well, you know what? For like product purposes, we think there's enough overlap. We're going to include all MAC bricks. Now, if all MAC bricks are in, then what about alumina-MAG carbon bricks, which are just, you know, it's a slippery slope. And I think that's what they were worried about. Thank you, Mr. Planner.